## No. 26189

## The People of the State of Colorado v. Felix Romero

(543 P.2d 56)

Decided November 24, 1975. Rehearing denied December 22, 1975.

John P. Moore, Attorney General, John E. Bush, Deputy, James S. Russell, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas,Jr. Chief Deputy, Dorian E. Welch, Deputy, Forrest W. Lewis, Deputy, for defendant-appellant.

*In Department.*

Opinion by MR. JUSTICE ERICKSON.

The issues on appeal include claims of ineffective assistance of counsel, insufficiency of evidence, prosecutorial misconduct, and failure to properly instruct the jury. We affirm.

Felix Romero, the defendant-appellant, and his co-defendants, Gilbert Rucobo and Salvador Morones, were convicted of conspiracy to commit first-degree burglary. C.R.S. 1963, 40-2-201;[1] 40-4-202.[2] Romero's co-defendants were additionally convicted of attempted burglary in the first degree. C.R.S. 1963, 40-2-101;[3] 40-4-202.[4] All three defendants were represented by one court-appointed attorney. Multiple representation is the basis of the defendant's claim of ineffective assistance of counsel.

Marianne Beydler and Sandra Quick were moving into an apartment with the help of Pete Valdez (a thirteen-year-old boy), the defendant, Felix Romero, the co-defendants, Gilbert Rucobo and Salvador Morones, and several other individuals. Nearly everyone was drinking beer. The

---

[1] Now section 18-2-201, C.R.S. 1973.
[2] Now section 18-4-202, C.R.S. 1973.
[3] Now section 18-2-101, C.R.S. 1973.
[4] Now section 18-4-202, C.R.S. 1973.

beer was the product of a shoplifting expedition which was carried out by Marianne. When the beer supply began to dwindle, Marianne said that she had been by The Spot, a 3.2 bar, earlier, that the door was loose, and that it would be easy to break in and steal some more beer. A heated discussion ensued, and finally all agreed that The Spot should be broken into. Anticipating the possibility of resistance, Rucobo flashed a pistol before the group. He then jumped into a car with Morones, Romero and the Valdez boy — who had the money to pay for gas — and headed for The Spot.

The testimony was conflicting as to whether Romero ever made it to The Spot. Valdez testified that Romero was present, but Morones and Romero testified that he had left the group before they arrived at the bar. Although an attempt was made to gain entry to the bar, the door was not breached. Frustrated in their burglary attempt, the group returned to the apartment where they were subsequently arrested. Romero was not present at that time.

## I.
### Ineffective Assistance of Counsel

Romero's primary contention is that he was denied effective assistance of counsel because one attorney represented him as well as the other co-defendants.

■ The Sixth Amendment guarantee of the assistance of counsel in a criminal proceeding "contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests." *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *White v. United States,* 396 F.2d 822 (5th Cir. 1968); *Allen v. District Court,* 184 Colo. 202, 519 P.2d 351 (1974); *see also The ABA Standards Relating to The Defense Function* § 3.5(b).

■ In cases where the claim of ineffective assistance of counsel is based on multiple representation, "some specific instance of prejudice, some real conflict of interest," must be demonstrated. *United States v. Lovano,* 420 F.2d 769 (2d Cir. 1970). The mere fact of multiple representation, standing alone, does not amount to a conflict of interest. *See People v. Gutierrez,* 182 Colo. 55, 511 P.2d 20 (1973); *People v. Seymour,* 182 Colo. 262, 512 P.2d 635 (1973).

■ The defendant in the instant case has failed to demonstrate prejudice which would mandate our reversing his conviction. His co-defendant Morones took the stand, but he testified consistently with the testimony of Romero himself. To assert that under this circumstance cross-examination of Morones was in some way inhibited by dual representation is too speculative for this court to consider. If anything, Morones' testimony tended to exculpate Romero, because he testified that Romero had left the group before they arrived at the bar, and Rucobo, the other co-defendant, did not take the stand. In summary, no defendant attempted to shift the blame to any other defendant. Defense counsel, although involved in the multiple representation of co-defendants, afforded Romero effective assistance of

counsel. No showing of prejudice, arising out of the multiple representation, was made.

## II.
## Sufficiency of Evidence

■ The defendant's claim that the evidence was insufficient to support the conspiracy conviction is totally without merit. The record plainly indicates that the entire group at the apartment, including Romero, discussed the break-in at The Spot. Moreover, the defendant was one of those who was selected and agreed to commit the actual break-in. Finally, the most damning evidence was that which emerged in the cross-examination of Romero. On cross-examination, Romero filled in the gaps in the prosecution's case with his answers to the following questions propounded by the deputy district attorney:

"Q: Well, you all heard Marianne's story about how she tried to break into The Spot; isn't that true?

"A: Yeah.

"Q: You heard that too, didn't you?

"A: Sure did.

"Q: And you and Bo-bo and Mr. Morones all decided that you would go and try to complete what Marianne couldn't do; didn't you decide that?

"A: Yeah, we decided that.

"Q: Decided you were going to go break in The Spot and steal some beer, didn't you?

"A: Yeah, we decided.

\* \* \* \*

"Q: At the time you left the apartment to go to The Spot that evening, you had decided you were going to go along and help break in to The Spot?

"A: Yeah."

Viewed in a light most favorable to the prosecution, the evidence was sufficient to sustain the defendant's conspiracy conviction.

## III.
## Prosecutorial Misconduct

■ In the course of his closing argument, the deputy district attorney referred to the fact that the defendant had involved a thirteen-year-old boy in his criminal activities. The defendant alleges that the prosecutor's comments were so prejudicial that reversal is required. The comments of the prosecutor are not to be commended, but were in response to arguments raised by defense counsel in the course of the trial and related to evidence which was properly before the jury. *People v. Plotner,* 188 Colo. 297, 534 P.2d 791 (1975); *Bizup v. People,* 150 Colo. 214, 371 P.2d 786 (1962); *Leick v. People,* 136 Colo. 535, 322 P.2d 674 (1958). The comments, in our view, were not so prejudicial as to require reversal. No objection was made to the argument, other than by way of the motion for a new trial, and the trial judge did not abuse his discretion in denying Romero a new trial. *See People v. Plotner, supra; People v. Motley,* 179 Colo. 77, 498 P.2d 339 (1972); *Bizup v. People, supra.*

530

## IV.

### Instructions

The defendant alleges that the trial court failed to give an instruction on the affirmative defense of abandonment. The defendant did not tender such an instruction, and the record on appeal contains no objection to the instructions which were given by the court. When an instruction is not tendered and a contemporaneous objection is not made, the instructions of the court cannot be the basis of reversal in the absence of plain error. *People v. Mackey,* 185 Colo. 24, 521 P.2d 910 (1974); *People v. Bowen,* 182 Colo. 294, 512 P.2d 1157 (1973). In our view, the instructions to the jury were sufficient to apprise the jury of the law of the case and reversible error did not occur.

Accordingly, we affirm.

MR. CHIEF JUSTICE PRINGLE, MR. JUSTICE HODGES, and MR. JUSTICE LEE concur.